# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| TRACY ANN HATTIG,<br><br>Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>Defendant. | No. C12-4092-MWB<br><br>**REPORT AND RECOMMENDATION** |

Plaintiff Tracy Ann Hattig seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for Supplemental Security Income benefits ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 401 *et seq.* ("Act"). Hattig contends that the administrative record ("AR") does not contain substantial evidence to support the Commissioner's decision that she was not disabled. For the reasons that follow, I recommend that the Commissioner's decision be reversed and remanded for further proceedings.

## *Background*

Hattig was born in 1970 and was 39 years old on her alleged onset date of October 20, 2009.[1] AR 15, 129. She has no past relevant work. AR 27. She protectively filed her application for SSI on October 20, 2009. AR 15. The application was denied initially and on reconsideration. AR 65-69, 75-83. Hattig then requested a hearing,

---

[1] Hattig originally claimed an onset date of September 11, 2006, but later amended the alleged onset date to October 20, 2009, which was the date of her application. AR 15.

which was conducted August 9, 2011, by Administrative Law Judge ("ALJ") Jan E. Dutton. AR 15. During the hearing, Hattig testified, as did a vocational expert ("VE"). AR 33-57. The ALJ issued a decision denying Hattig's application on September 7, 2011. AR 15-28. On September 19, 2012, the Appeals Council denied Hattig's request for review. AR 1-5. As such, the ALJ's decision is the final decision of the Commissioner. AR 1; *see also* 20 C.F.R. § 416.1481.

On October 18, 2012, Hattig commenced an action in this court seeking review of the ALJ's decision. This matter has been referred to me pursuant to 28 U.S.C. § 636(b)(1)(B) for the filing of a report and recommended disposition of the case. The parties have briefed the issues and the matter is now fully submitted.

### *Summary of ALJ's Decision*

The ALJ made the following findings:

(1) The claimant has not engaged in substantial gainful activity since October 20, 2009, the application date (20 CFR 416.971 *et seq.*).

(2) The claimant has the following severe impairments: major depressive disorder and generalized anxiety disorder (20 CFR 416.920(c)).

(3) The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

(4) After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: will need to consider only unskilled work with an SVP 1 or 2. Consider work that does not require extended concentration or

2

> attention. Social interaction should not be intense or frequent, but could be occasional with the general public, co-workers and supervisors.
>
> (5) Step 4 –The claimant has no past relevant work (20 CFR 416.965).
>
> (6) The claimant was born on May 12, 1970 and was 39 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).
>
> (7) The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).
>
> (8) Transferability of job skills is not an issue because the claimant does not have past relevant work. (20 CFR 416.968).
>
> (9) Step 5 – Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).
>
> (10) The claimant has not been under a disability, as defined in the Social Security Act, since October 20, 2009, the date the application was filed (20 CFR 416.920(g)).

AR 15-28. In determining that certain other impairments (low back pain, hypertension and obesity) were not severe, the ALJ found that they "do not interfere more than minimally with the claimant's ability to perform basic work related activities." AR 18. Hattig does not challenge this finding. As such, the impairments at issue in this case are mental impairments – major depressive disorder and generalized anxiety disorder. AR 17.

Next, the ALJ found that none of Hattig's impairments, individually or in combination, met or equaled one of the listed impairments in 20 CFR Part 404, Subpart

P, Appendix 1. AR 18-19. The "paragraph B" criteria for the relevant listed impairments require that the impairments cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation.[2] AR 18. A "marked" limitation is one that is more than moderate but less than extreme. *Id.* The ALJ found that Hattig had mild difficulties in activities of daily living and social functioning, with moderate difficulties in concentration, persistence or pace. AR 18-19. The ALJ also found that Hattig had experienced no episodes of decompensation. AR 19. Therefore, the ALJ found the paragraph B criteria were not satisfied. *Id.* She also stated that she had considered the "paragraph C" criteria for the relevant listing and that the evidence failed to establish those criteria, as well. *Id.* Hattig does not challenge these findings.

The ALJ then provided a residual functional capacity ("RFC") assessment and found that Hattig had the RFC to perform a full range of work at all exertional levels but with the following non-exertional limitations: (a) unskilled work with a SVP[3] 1 or 2, (b) work that does not require extended concentration or attention and (c) work that does

---

[2] Episodes of decompensation are "exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." 20 CFR Part 404, Subpart P, Appendix 1. Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks. If the episodes of decompensation are more frequent and of shorter duration or less frequent and of longer duration, the Commissioner must "use judgment to determine if the duration and functional effects of the episodes are of equal severity and may be used to substitute for the listed finding in a determination of equivalence." *Id.*

[3] "SVP" refers to Specific Vocational Preparation, defined in Appendix C of the Dictionary of Occupational Titles as being "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." A position with SVP 1 requires only a short demonstration while a position with SVP 2 requires anything beyond a short demonstration, up to and including 1 month. *See* Dictionary of Occupational Titles, Appendix C.

not require intense or frequent social interaction, but may include occasional interaction with the general public, co-workers, and or supervisors. AR 19. In explaining this determination, the ALJ first stated that the state agency consultants found that Hattig is not so severely impaired as to be prevented from working. AR 20. The ALJ then discussed Hattig's testimony and other subjective allegations but found they were not fully credible. AR 21.

In making this finding, the ALJ summarized the objective medical evidence and found that Hattig's impairments do not affect the quality of Hattig's daily functioning to the extent Hattig alleges. AR 21-25. Instead, according to the ALJ, Hattig has been able to independently sustain activities and interests over time and to maintain normal daily activities, including babysitting her grandchildren, transporting children to and from school, cooking, cleaning and doing the laundry. *Id.* The ALJ also noted that Hattig has never had inpatient treatment for her mental condition, had cancelled medical appointments on multiple occasions and was not entirely compliant in taking prescribed medications. AR 21, 26.

The ALJ next discussed the medical opinion evidence, stating that "there are no opinions from treating or examining physicians that indicate the claimant is disabled or has significant functional limitations greater than those reflected" in the RFC. AR 26. The ALJ also stated that the objective medical findings "fail to show the claimant's symptoms are as limiting as she has alleged" and that Hattig's "prescribed medications provide adequate, if not total relief, when taken as directed." *Id.* The ALJ discussed the opinions of the state agency consultants, both of whom reviewed Hattig's records and determined that her mental impairments are not severe. *Id.* The ALJ determined that these opinions were entitled to substantial weight because they were given by acceptable medical sources and are consistent with the record as a whole.

Next, the ALJ stated that she gave great weight to the opinions of two doctors and four other examining sources who provided care to Hattig. *Id.* She found that the doctors, Dr. Brinck and Dr. Kozos, are "acceptable medical sources and treating or examining sources." *Id.* While the others, Ms. Clausen, Ms. Nolan, Ms. Hassebroek and Ms. Pick, are not acceptable medical sources, the ALJ found them to be examining sources whose opinions are entitled to weight. *Id.* The ALJ found that the opinions of all of these sources are consistent with each other and with the other medical evidence in the record. *Id.* She then concluded by stating that her RFC determination is supported by the record as a whole. AR 27.

Finally, and based on the VE's testimony, the ALJ found that an individual of Hattig's age, education, work experience and RFC could perform several jobs that exist in the national economy, including kitchen helper, laundry room worker, house cleaner and addresser. AR 27-28. As such, the ALJ concluded that Hattig is not disabled within the meaning of the Act. AR 28.

### *Disability Determinations and the Burden of Proof*

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141, 107 S. Ct. 2287, 2291 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that

8

there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or her age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

### *The Substantial Evidence Standard*

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645. The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Wester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not

subject to reversal simply because some evidence may support the opposite conclusion.").

*Discussion*

Hattig raises three issues in contending that the ALJ's decision is not supported by substantial evidence in the record as a whole:

I. The ALJ Failed To Give Appropriate Weight To The Opinions Of Hattig's Treating Physicians.

II. The ALJ Failed To Properly Consider Hattig's Subjective Allegations Under The *Polaski* Standard.

III. The ALJ Incorrectly Formulated Hypothetical Questions To The Vocational Expert.

*See* Doc. No. 13. I will address each issue separately.

*1. Treating Physicians*

The Commissioner's regulations give great deference to medical opinions provided by treating physicians:

> Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. <u>If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight</u>. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of

11

> determination or decision for the weight we give your treating source's opinion.

20 C.F.R. § 416.927(c)(2) [emphasis added]. What this means is that a treating physician's opinion is generally given controlling weight, but is not inherently entitled to it. *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006). A treating physician's opinion "does not automatically control or obviate the need to evaluate the record as a whole." *Leckenby v. Astrue*, 487 F.3d 626, 632 (8th Cir. 2007). But that opinion will be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record. *Hacker*, 459 F.3d at 937. The ALJ must "always give good reasons" for the weight given to a treating physician's evaluation. 20 C.F.R. § 416.927(c)(2); *see also Davidson v. Astrue*, 501 F.3d 987, 990 (8th Cir. 2007).

When a treating physician's opinion is entitled to controlling weight, the ALJ must defer to the physician's medical opinions about the nature and severity of an applicant's impairments, including symptoms, diagnosis and prognosis, what an applicant is capable of doing despite the impairment, and the resulting restrictions. 20 C.F.R. § 416.927(a)(2); *Ellis v. Barnhart*, 392 F.3d 988, 995 (8th Cir. 2005). However, a treating physician's conclusion that an applicant is "disabled" or "unable to work" addresses an issue that is reserved for the Commissioner and therefore is not a "medical opinion" that must be given controlling weight. *Ellis*, 392 F.3d at 994.

Here, Hattig provides an overview of the standards for weighing medical opinions and then declares that the ALJ failed to give proper weight to those opinions in this case. However, Hattig does not identify a single medical opinion, from any treating source, to which the ALJ supposedly failed to give appropriate weight. Indeed, the only medical record cited in this portion of Hattig's brief is a July 27, 2011, note from a nurse practitioner that lists Hattig's diagnoses and states: "I feel she is not able to work at this

time due to her illness." AR 439. A nurse practitioner is not a treating "acceptable medical source" whose medical opinions are entitled to controlling weight. 20 C.F.R. § 416.913(d)(1); *see also Lacroix v. Barnhart*, 465 F.3d 881, 885–86 (8th Cir. 2006). Moreover, as noted above, an opinion that a claimant is not able to work is not even a "medical opinion."

The ALJ expressly found that "there are no opinions from treating or examining physicians that indicate the claimant is disabled or has significant functional limitations greater than those reflected" in the RFC. AR 26. If this statement is incorrect, Hattig should have identified specific medical opinions from treating or examining sources that support her claim. She did not do so. Having reviewed the entire record, I agree with the ALJ that there are no medical opinions in the record from any treating source that are inconsistent with the ALJ's RFC determination. The ALJ did not err in weighing those opinions because they do not exist.

This does not end the inquiry, however, as it instead highlights the *real* problem: There are simply *no* medical opinions from any treating or examining source concerning Hattig's functional limitations during the relevant period of time. Hattig claims a disability onset date of October 20, 2009, and the record reflects that she received therapy and treatment for her mental impairments on many occasions after that date. AR 371-77, 598-639. The medical records routinely state diagnoses of, among other things, major depressive disorder and generalized anxiety disorder. *See, e.g.,* AR 604, 609, 611 and 613. However, I have not been able to locate (and neither party has identified) a treating or examining source's medical opinion about the nature and severity of Hattig's impairments during the relevant period of time, including her symptoms, diagnosis and prognosis, what she is capable of doing despite the impairments, and the resulting restrictions.

The only acceptable medical sources who have provided medical opinions in this case are state agency consultants who reviewed Hattig's records but did not examine or treat her. AR 26. As noted earlier, this is a situation in which the claimant has no past relevant work but, at Step Five, the Commissioner has found that she has the RFC to perform various jobs that exist in the national economy. Given the lack of evidence from any treating or examining source supporting this finding, it is not supported by substantial evidence in the record.

This outcome is dictated by *Nevland v. Apfel*, 204 F.3d 853 (8th Cir. 2000). There, like here, the Commissioner made a Step Five determination that a claimant who could not perform past relevant work could, nonetheless, perform various jobs identified by a VE. *Id.* at 857. And, like here, non-treating and non-examining physicians reviewed the claimant's records and gave opinions about the claimant's RFC, which the ALJ then used in formulating hypothetical questions to a VE. *Id.* at 858. The Eighth Circuit Court of Appeals began its analysis as follows:

> In our circuit it is well settled law that once a claimant demonstrates that he or she is unable to do past relevant work, the burden of proof shifts to the Commissioner to prove, first that the claimant retains the residual functional capacity to do other kinds of work, and, second that other work exists in substantial numbers in the national economy that the claimant is able to do. *McCoy v. Schweiker*, 683 F.2d 1138, 1146–47 (8th Cir. 1982)(en banc); *O'Leary v. Schweiker*, 710 F.2d 1334, 1338 (8th Cir. 1983). It is also well settled law that it is the duty of the ALJ to fully and fairly develop the record, even when, as in this case, the claimant is represented by counsel. *Warner v. Heckler*, 722 F.2d 428, 431 (8th Cir. 1983).

*Id.* at 857. The court then noted that while the record contained many treatment notes, none of the treating physicians provided opinions concerning the claimant's RFC. *Id.* at 858. The court then stated:

> In the case at bar, there is no *medical* evidence about how Nevland's impairments affect his ability to function now. The ALJ relied on the opinions of non-treating, non-examining physicians who reviewed the reports of the treating physicians to form an opinion of Nevland's RFC. In our opinion, this does not satisfy the ALJ's duty to fully and fairly develop the record. The opinions of doctors who have not examined the claimant ordinarily do not constitute substantial evidence on the record as a whole. *Jenkins v. Apfel,* 196 F.3d 922, 925 (8th Cir.1999). Likewise, the testimony of a vocational expert who responds to a hypothetical based on such evidence is not substantial evidence upon which to base a denial of benefits. *Id*. In our opinion, the ALJ should have sought such an opinion from Nevland's treating physicians or, in the alternative, ordered consultative examinations, including psychiatric and/or psychological evaluations to assess Nevland's mental and physical residual functional capacity. As this Court said in *Lund v. Weinberger*, 520 F.2d 782, 785 (8th Cir.1975): "An administrative law judge may not draw upon his own inferences from medical reports. *See Landess v. Weinberger*, 490 F.2d 1187, 1189 (8th Cir.1974); *Willem v. Richardson*, 490 F.2d 1247, 1248–49 n. 3 (8th Cir.1974)."

*Id*. [emphasis in original].

This case presents the same situation. The ALJ found that Hattig has severe mental impairments. AR 17. Because Hattig has no past relevant work, the Commissioner bears the burden of proving that despite those impairments, she has the RFC to do some kind of work that exists in the national economy. *Nevland*, 204 F.3d at 857. However, the ALJ determined Hattig's RFC without the benefit of a medical opinion from any doctor who actually examined Hattig. Instead, she relied on the opinions of non-examining state agency consultants in evaluating Hattig's RFC and in formulating a hypothetical question to the VE. AR 26, 54. Pursuant to *Nevland*, substantial evidence does not support the ALJ's determination of Hattig's RFC.

This is not the argument Hattig raised. However, remand is nonetheless required because, under *Nevland*, I cannot find that substantial evidence supports the ALJ's determination that Hattig is able to perform positions that exist in the national

economy and, therefore, is not disabled. On remand, the ALJ must fully and fairly develop the record by obtaining a medical opinion, either from a treating physician or via a consultative examination, as to Hattig's RFC in light of her severe mental impairments.

### 2. *Hattig's Credibility*

Hattig next argues that the ALJ's analysis of her credibility was flawed and inadequate. The standard for evaluating the credibility of a claimant's subjective complaints is set forth in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The ALJ must consider the claimant's daily activities; duration, frequency and intensity of pain; dosage and effectiveness of medication; precipitating and aggravating factors; and functional restrictions. *Polaski*, 739 F.2d at 1322. The claimant's work history and the absence of objective medical evidence to support the claimant's complaints are also relevant. *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000). The ALJ is not required to explicitly discuss each factor as long as he or she acknowledges and considers the factors before discrediting the claimant's subjective complaints. *Goff*, 421 F.3d at 791. "An ALJ who rejects [subjective] complaints must make an express credibility determination explaining the reasons for discrediting the complaints." *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000). The court must "defer to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence." *Guilliams v. Barnart*, 393 F.3d 798, 801 (8th Cir. 2005). The ALJ may not discount subjective complaints solely because they are not supported by objective medical evidence. *Mouser v. Astrue*, 545 F.3d 634, 638 (8th Cir. 2008); *O'Donnell v. Barnhart*, 318 F.3d 811, 816 (8th Cir. 2003).

Here, the ALJ found that Hattig's statements about the nature and limiting effects of her symptoms were not fully credible. AR 20-21. The ALJ provided several reasons for this finding, including: (a) lack of objective medical findings supporting the

statements, (b) minimal or sporadic treatment, (c) Hattig's daily activities and (d) her lack of compliance with treatment. AR 21, 25-26. Doc. No. 10 at 16. Based on my review of the existing record, I find that these are good reasons supported by substantial evidence. First, the medical evidence for the period of time after Hattig's alleged onset date indicates a conservative treatment regimen, objective clinical findings less severe than those Hattig alleges and moderate symptoms. AR 21-25, 313-14, 346-47, 371-77, 599-639. Hattig received no inpatient treatment for her mental health conditions, as they were instead treated with therapy and medication. Conservative medical treatment is an appropriate credibility factor. *Gowell v. Apfel,* 242 F.3d 793, 796 (8th Cir. 2001).

With regard to daily activities, Hattig reported that she shopped, took her children to school, occasionally gambled, and otherwise independently maintained activities, interests and family relationships over time. AR 20-21, 25, 41-42, 169-70, 172-73, 209. The ALJ did not equate these routine daily activities with substantial gainful activity, but compared them to Hattig's allegations concerning her symptoms and found them to be inconsistent. AR 25. This is an appropriate analysis, *Medhaug v. Astrue*, 578 F.3d 805, 817 (8th Cir. 2009), and I find that it is supported by substantial evidence.

Finally, and as the ALJ noted, the medical evidence reflects many instances in which Hattig either cancelled, or simply failed to show for, scheduled appointments at Siouxland Mental Health Center. AR 297, 302, 309, 310, 315, 324, 327, 334, 339, 344, 345, 377, 601, 602 and 605. An ALJ may properly consider a claimant's cancellation of appointments and other acts of noncompliance as a credibility factor. *Wildman v. Astrue*, 596 F.3d 959, 965-66 (8th Cir. 2010); *Eichelberger*, 390 F.3d at 590; *Haley v. Massanari,* 258 F.3d 742, 748 (8th Cir. 2001).

When an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, the court should normally defer to the ALJ's credibility determination.

*Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003). It is not my role to re-weigh the evidence. *See* 42 U.S.C. § 405(g); *see also Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000) ("[I]f, after reviewing the record, [the Court] find[s] that it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [Commissioner's] findings, [the Court] must affirm the decision of the Commissioner.") (citations and quotations omitted). Here, I conclude that the ALJ provided good reasons, supported by substantial evidence in the existing record, for discounting Hattig's subjective complaints.

Nonetheless, because I am recommending remand for further development of the medical evidence, it will be necessary for the ALJ to revisit her assessment of Hattig's credibility in light of the new evidence. This is especially true if, for example, the ALJ obtains medical opinion evidence that is consistent with Hattig's subjective complaints. On remand, the ALJ shall explain what effect, if any, the new medical evidence has on her evaluation of Hattig's credibility.

### 3. *The VE's Testimony*

Hattig next argues that the ALJ erred in relying on the VE's testimony because the ALJ improperly formulated hypothetical questions that did not encompass all of Hattig's impairments. Hattig correctly notes that when a hypothetical question fails to include all relevant impairments, the VE's answer to that question does not constitute substantial evidence. *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996). I have already concluded that remand is necessary because the ALJ's RFC determination and formulation of hypothetical questions were not supported by substantial evidence. On remand, if the ALJ's assessment of Hattig's RFC changes then it will be necessary for the ALJ to obtain additional VE testimony by posing hypothetical questions based on the fully and fairly developed record.

## *Conclusion and Recommendation*

For the reasons discussed above, I RESPECTFULLY RECOMMEND that the Commissioner's decision be **reversed** and this case be **remanded** for further proceedings consistent with this report. Judgment should be entered in favor of Hattig and against the Commissioner.

On remand, the ALJ must fully and fairly develop the medical evidence. At minimum, this requires the ALJ to obtain a medical opinion concerning Hattig's mental residual functional capacity from either a treating source or, at least, a consultative examining physician. The ALJ then must undertake a new analysis at Steps Four and Five to formulate Hattig's RFC and determine whether she is able to perform work that exists in the national economy. Depending on the nature of the newly-developed evidence, this may require the ALJ to reassess the credibility of Hattig's subjective complaints and/or to obtain additional VE testimony.

Objections to this Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b) must be filed within fourteen (14) days of the service of a copy of this Report and Recommendation. Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Civ. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**IT IS SO ORDERED.**

**DATED** this 16th day of September, 2013.

                                _____
                                LEONARD T. STRAND
                                UNITED STATES MAGISTRATE JUDGE