# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

TRACY ANN HATTIG,

        Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

        Defendant.

No. C 12-4092-MWB

**MEMORANDUM OPINION AND ORDER REGARDING REPORT AND RECOMMENDATION**

---

## TABLE OF CONTENTS

**I.**    **INTRODUCTION**............................................................................ **2**
    **A.**    *Procedural Background* ......................................................... **2**
    **B.**    *ALJ's Findings* ..................................................................... **3**
    **C.**    *Judge Strand's R&R* ............................................................. **7**
    **D.**    *The Commissioner's Objections* .............................................. **9**

**II.**   **ANALYSIS** ................................................................................ **9**
    **A.**    *Standard of Review*............................................................... **9**
    **B.**    *Discussion*.......................................................................... **15**

**III.**  **CONCLUSION** ......................................................................... **21**

This case is before me on a Report and Recommendation (R&R) (docket no. 17) from Magistrate Judge Leonard Strand recommending that I reverse and remand a decision by the Social Security Commissioner (the Commissioner) denying Plaintiff Tracy Hattig (Hattig) Supplemental Security Income (SSI) benefits under Title XVI of the Social Security Act. The Commissioner timely filed objections to the R&R. For the reasons discussed below, I adopt Judge Strand's R&R, reverse the Commissioner's decision, and remand this case to the Commissioner for further proceedings.

# I.    INTRODUCTION

## A.    Procedural Background

Judge Strand summarized this case's procedural background as follows:

> Hattig was born in 1970 and was 39 years old on her alleged onset date of October 20, 2009. AR 15, 129. She has no past relevant work. AR 27. She protectively filed her application for SSI on October 20, 2009. AR 15. The application was denied initially and on reconsideration. AR 65-69, 75-83. Hattig then requested a hearing, which was conducted August 9, 2011, by Administrative Law Judge ("ALJ") Jan E. Dutton. AR 15. During the hearing, Hattig testified, as did a vocational expert ("VE"). AR 33-57. The ALJ issued a decision denying Hattig's application on September 7, 2011. AR 15-28. On September 19, 2012, the Appeals Council denied Hattig's request for review. AR 1-5. As such, the ALJ's decision is the final decision of the Commissioner. AR 1; *see also* 20 C.F.R. § 416.1481.

> On October 18, 2012, Hattig commenced an action in this court seeking review of the ALJ's decision. This matter has been referred to me pursuant to 28 U.S.C. § 636(b)(1)(B) for the filing of a report and recommended disposition of the case.

Report and Recommendation 1-2 (docket no. 17). Judge Strand issued his R&R on September 16, 2013, in which he recommended that the ALJ's decision be reversed and remanded for further proceedings (docket no. 17). On September 30, 2013, the Commissioner filed objections to the R&R (docket no. 18). The Commissioner essentially argues that Judge Strand's recommendation erroneously suggests that the Commissioner, rather than Hattig, bears the burden of proving Hattig's residual functional capacity (RFC). On October 9, 2013, Hattig filed a response opposing the Commissioner's objections (docket no. 19).

## B.    ALJ's Findings

In his R&R, Judge Strand thoroughly summarized the ALJ's decision. Report and Recommendation 2-6 (docket no. 17). Neither party has objected to this summary, only to Judge Strand's application of the law. I therefore adopt the summary of the ALJ's findings from the R&R, which is set forth below:

The ALJ made the following findings:

(1)    The claimant has not engaged in substantial gainful activity since October 20, 2009, the application date (20 CFR 416.971 *et seq.*).

(2)    The claimant has the following severe impairments: major depressive disorder and generalized anxiety disorder (20 CFR 416.920(c)).

(3)    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

(4)    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: will need to consider only unskilled work with an SVP 1 or 2. Consider work that does not require extended concentration or attention. Social interaction should not be intense or frequent, but could be occasional with the general public, co-workers and supervisors.

(5)    Step 4 –The claimant has no past relevant work (20 CFR 416.965).

(6)    The claimant was born on May 12, 1970 and was 39 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

(7)     The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

(8)     Transferability of job skills is not an issue because the claimant does not have past relevant work. (20 CFR 416.968).

(9)     Step 5 – Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

(10)    The claimant has not been under a disability, as defined in the Social Security Act, since October 20, 2009, the date the application was filed (20 CFR 416.920(g)).

AR 15-28.  In determining that certain other impairments (low back pain, hypertension and obesity) were not severe, the ALJ found that they "do not interfere more than minimally with the claimant's ability to perform basic work related activities."  AR 18.  Hattig does not challenge this finding.  As such, the impairments at issue in this case are mental impairments – major depressive disorder and generalized anxiety disorder.  AR 17.

Next, the ALJ found that none of Hattig's impairments, individually or in combination, met or equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  AR 18-19.  The "paragraph B" criteria for the relevant listed impairments require that the impairments cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation.[1]  AR

---

[1] Episodes of decompensation are "exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace."   20 CFR Part 404, Subpart P, Appendix 1.  Repeated episodes of decompensation, each of extended duration, means three episodes

18.     A "marked" limitation is one that is more than moderate but less than extreme.  *Id.*  The ALJ found that Hattig had mild difficulties in activities of daily living and social functioning, with moderate difficulties in concentration, persistence or pace.  AR 18-19.  The ALJ also found that Hattig had experienced no episodes of decompensation.  AR 19.  Therefore, the ALJ found the paragraph B criteria were not satisfied.  *Id.*  She also stated that she had considered the "paragraph C" criteria for the relevant listing and that the evidence failed to establish those criteria, as well.  *Id.*  Hattig does not challenge these findings.

The ALJ then provided a residual functional capacity ("RFC") assessment and found that Hattig had the RFC to perform a full range of work at all exertional levels but with the following non-exertional limitations:  (a) unskilled work with a SVP[2] 1 or 2, (b) work that does not require extended concentration or attention and (c) work that does not require intense or frequent social interaction, but may include occasional interaction with the general public, co-workers, and or supervisors.  AR 19.  In explaining this determination, the ALJ first stated that the state agency consultants found that Hattig is not so severely impaired as to be prevented from working.  AR 20.  The ALJ then

---

within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks. If the episodes of decompensation are more frequent and of shorter duration or less frequent and of longer duration, the Commissioner must "use judgment to determine if the duration and functional effects of the episodes are of equal severity and may be used to substitute for the listed finding in a determination of equivalence."  *Id.*

[2] "SVP" refers to Specific Vocational Preparation, defined in Appendix C of the Dictionary of Occupational Titles as being "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation."  A position with SVP 1 requires only a short demonstration while a position with SVP 2 requires anything beyond a short demonstration, up to and including 1 month. *See* Dictionary of Occupational Titles, Appendix C.

discussed Hattig's testimony and other subjective allegations but found they were not fully credible. AR 21.

In making this finding, the ALJ summarized the objective medical evidence and found that Hattig's impairments do not affect the quality of Hattig's daily functioning to the extent Hattig alleges. AR 21-25. Instead, according to the ALJ, Hattig has been able to independently sustain activities and interests over time and to maintain normal daily activities, including babysitting her grandchildren, transporting children to and from school, cooking, cleaning and doing the laundry. *Id.* The ALJ also noted that Hattig has never had inpatient treatment for her mental condition, had cancelled medical appointments on multiple occasions and was not entirely compliant in taking prescribed medications. AR 21, 26.

The ALJ next discussed the medical opinion evidence, stating that "there are no opinions from treating or examining physicians that indicate the claimant is disabled or has significant functional limitations greater than those reflected" in the RFC. AR 26. The ALJ also stated that the objective medical findings "fail to show the claimant's symptoms are as limiting as she has alleged" and that Hattig's "prescribed medications provide adequate, if not total relief, when taken as directed." *Id.* The ALJ discussed the opinions of the state agency consultants, both of whom reviewed Hattig's records and determined that her mental impairments are not severe. *Id.* The ALJ determined that these opinions were entitled to substantial weight because they were given by acceptable medical sources and are consistent with the record as a whole.

Next, the ALJ stated that she gave great weight to the opinions of two doctors and four other examining sources who provided care to Hattig. *Id.* She found that the doctors, Dr. Brinck and Dr. Kozos, are "acceptable medical sources and treating or examining sources." *Id.* While the others, Ms. Clausen, Ms. Nolan, Ms. Hassebroek and Ms. Pick, are not acceptable medical sources, the ALJ found

them to be examining sources whose opinions are entitled to weight. *Id.* The ALJ found that the opinions of all of these sources are consistent with each other and with the other medical evidence in the record. *Id.* She then concluded by stating that her RFC determination is supported by the record as a whole. AR 27.

Finally, and based on the VE's testimony, the ALJ found that an individual of Hattig's age, education, work experience and RFC could perform several jobs that exist in the national economy, including kitchen helper, laundry room worker, house cleaner and addresser. AR 27-28. As such, the ALJ concluded that Hattig is not disabled within the meaning of the Act. AR 28.

Report and Recommendation at 2-6 (docket no. 17).

## C.    *Judge Strand's R&R*

In his R&R, Judge Strand recommends that I reverse and remand the Commissioner's decision denying Hattig benefits, but for a reason not raised by Hattig. Judge Strand held that this case should be remanded because, "at Step Five, the Commissioner [] found that [Hattig] has the RFC to perform various jobs that exist in the national economy" despite the fact that "[t]here are simply no medical opinions from any treating or examining source concerning Hattig's functional limitations during the relevant period of time" (docket no. 17, at 13-14). In short, the ALJ found that Hattig was not disabled at Step 5 of the ALJ's analysis without the benefit of a treating or examining source's medical opinion.

Because the administrative record contained no medical opinion from a treating source, Judge Strand held that the ALJ could not deny Hattig benefits at Step 5 without first attempting to "develop the record by obtaining a medical opinion, either from a treating physician or a consultative examination . . ." (docket no. 17, at 16). Judge Strand based this conclusion on *Nevland v. Apfel*, 204 F.3d 853 (8th Cir. 2000). In

*Nevland*, like here, the ALJ denied a claimant benefits at Step 5 without obtaining a medical opinion from a treating source. *Id.* at 858. The Eighth Circuit Court of Appeals held that doing so violated the ALJ's duty to develop the administrative record, causing the ALJ to rely only on non-treating sources, whose opinions ordinarily do not constitute substantial evidence:

> In the case at bar, there is no *medical* evidence about how Nevland's impairments affect his ability to function now. The ALJ relied on the opinions of non-treating, non-examining physicians who reviewed the reports of the treating physicians to form an opinion of Nevland's RFC. In our opinion, this does not satisfy the ALJ's duty to fully and fairly develop the record. The opinions of doctors who have not examined the claimant ordinarily do not constitute substantial evidence on the record as a whole. *Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999). Likewise, the testimony of a vocational expert who responds to a hypothetical based on such evidence is not substantial evidence upon which to base a denial of benefits. *Id.* In our opinion, the ALJ should have sought such an opinion from Nevland's treating physicians or, in the alternative, ordered consultative examinations, including psychiatric and/or psychological evaluations to assess Nevland's mental and physical residual functional capacity.

*Id.* The court in *Nevland* thus reversed and remanded the case for further proceedings consistent with its opinion. *Id.*

Like the court in *Nevland*, Judge Strand noted that the ALJ in this case "relied on the opinions of non-examining state agency consultants in evaluating Hattig's RFC and in formulating a hypothetical question to the VE" at Step 5, and, therefore, substantial evidence does not support the ALJ's decision (docket no. 17, at 15). Thus, Judge Strand recommends that I reverse the Commissioner's decision and remand this case for further proceedings.

### D.     The Commissioner's Objections

The Commissioner does not appear to contest Judge Strand's observation that the administrative record contains no medical opinion from a treating source. Instead, the Commissioner makes two objections to Judge Strand's conclusion that *Nevland* compels reversal and remand. First, the Commissioner argues that Judge Strand's application of *Nevland* is inconsistent with post-*Nevland* changes in the Social Security regulations, which make clear that the claimant, rather than the Commissioner, bears the burden of proving his or her RFC. Judge Strand concluded that "the ALJ determined Hattig's RFC without the benefit of a medical opinion from any doctor who actually examined Hattig," and, therefore, *Nevland* requires the Commissioner to seek evidence from additional treating sources. According to the Commissioner, applying *Nevland* in this way improperly places the burden of proving Hattig's RFC on the Commissioner.

Second, the Commissioner argues that the ALJ fulfilled her duty to develop the record, which provides substantial evidence supporting her conclusion. The Commissioner argues that, although the Commissioner is sometimes responsible for developing a claimant's medical record, the record here was sufficiently developed to allow the ALJ to render a decision based on substantial evidence. Thus, under *Nevland*, the ALJ was not required to order additional medical opinions from Hattig's treating doctors.

## II.     ANALYSIS

### A.     Standard of Review

I review Judge Strand's R&R under the statutory standards found in 28 U.S.C. § 636(b)(1):

> A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part,

> the findings or recommendations made by the magistrate
> judge. The judge may also receive further evidence or
> recommit the matter to the magistrate judge with
> instructions.

28. U.S.C. § 636(b)(1) (2006); *see* Fed. R. Civ. P. 72(b) (stating identical requirements); N.D. Ia. L.R. 72, 72.1 (allowing the referral of dispositive matters to a magistrate judge but not articulating any standards to review the magistrate judge's report and recommendation). While examining these statutory standards, the United States Supreme Court explained:

> Any party that desires plenary consideration by the Article
> III judge of any issue need only ask. Moreover, while the
> statute does not require the judge to review an issue *de novo*
> if no objections are filed, it does not preclude further review
> by the district judge, *sua sponte* or at the request of a party,
> under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 154 (1985). Thus, a district court may review *de novo* any issue in a magistrate judge's report and recommendation at any time. *Id.* If a party files an objection to the magistrate judge's report and recommendation, however, the district court *must* "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). In the absence of an objection, the district court is not required "to give any more consideration to the magistrate's report than the court considers appropriate." *Thomas*, 474 U.S. at 150.

*De novo* review, of course, is nondeferential and generally allows a reviewing court to make an "independent review" of the entire matter. *Salve Regina College v. Russell*, 499 U.S. 225, 238 (1991) (noting also that "[w]hen *de novo* review is compelled, no form of appellate deference is acceptable"); *see Doe v. Chao*, 540 U.S. 614, 620-19 (2004) (noting *de novo* review is "distinct from any form of deferential review"). The *de novo* review of a magistrate judge's report and recommendation,

however, only means a district court "'give[s] fresh consideration to those issues to which specific objection has been made.'" *United States v. Raddatz*, 447 U.S. 667, 675 (1980) (quoting H.R. Rep. No. 94-1609, at 3, *reprinted in* 1976 U.S.C.C.A.N. 6162, 6163 (discussing how certain amendments affect 28 U.S.C. § 636(b))). Thus, while *de novo* review generally entails review of an entire matter, in the context of § 636 a district court's *required de novo* review is limited to "*de novo* determination[s]" of only "those portions" or "specified proposed findings" to which objections have been made. 28 U.S.C. § 636(b)(1); *see Thomas*, 474 U.S. at 154 ("Any party that desires plenary consideration by the Article III judge of any issue need only ask."). Consequently, the Eighth Circuit Court of Appeals has indicated *de novo* review would only be required if objections were "specific enough to trigger *de novo* review." *Branch v. Martin*, 886 F.2d 1043, 1046 (8th Cir. 1989). Despite this "specificity" requirement to trigger *de novo* review, the Eighth Circuit Court of Appeals has "emphasized the necessity . . . of retention by the district court of substantial control over the ultimate disposition of matters referred to a magistrate." *Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994). As a result, the Eighth Circuit Court of Appeals has been willing to "liberally construe[]" otherwise general pro se objections to require a *de novo* review of all "alleged errors," *see Hudson v. Gammon*, 46 F.3d 785, 786 (8th Cir. 1995), and to conclude that general objections require "full *de novo* review" if the record is concise. *Belk*, 15 F.3d at 815 ("Therefore, even had petitioner's objections lacked specificity, a *de novo* review would still have been appropriate given such a concise record."). Even if the reviewing court must construe objections liberally to require *de novo* review, it is clear to this court that there is a distinction between making an objection and making no objection at all. *See Coop. Fin. Assoc., Inc. v. Garst*, 917 F. Supp. 1356, 1373 (N.D. Iowa 1996) ("The court finds that the distinction between a flawed effort to bring objections to the district

court's attention and no effort to make such objections is appropriate."). Therefore, I will strive to provide *de novo* review of all issues that might be addressed by any objection, whether general or specific, but will not feel compelled to give *de novo* review to matters to which no objection at all has been made.

In the absence of any objection, the Eighth Circuit Court of Appeals has indicated a district court should review a magistrate judge's report and recommendation under a clearly erroneous standard of review. *See Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting when no objections are filed and the time for filing objections has expired, "[the district court judge] would only have to review the findings of the magistrate judge for clear error"); *Taylor v. Farrier*, 910 F.2d 518, 520 (8th Cir. 1990) (noting the advisory committee's note to Fed. R. Civ. P. 72(b) indicates "when no timely objection is filed the court need only satisfy itself that there is no clear error on the face of the record"); *Branch*, 886 F.2d at 1046 (contrasting *de novo* review with "clearly erroneous standard" of review, and recognizing *de novo* review was required because objections were filed). The United States Supreme Court has stated that the "foremost" principle under the "clearly erroneous" standard of review "is that '[a] finding is "clearly erroneous" when[,] although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). Thus, the clearly erroneous standard of review is deferential, *see Dixon v. Crete Medical Clinic, P.C.*, 498 F.3d 837, 847 (8th Cir. 2007) (noting a finding is not clearly erroneous even if another view is supported by the evidence), but a district court may still reject the magistrate judge's report and recommendation when the district court is "left with a definite and firm conviction that a mistake has been committed." *U.S. Gypsum Co.*, 333 U.S. at 395.

Even though some "lesser review" than *de novo* is not "positively require[d]" by statute, *Thomas*, 474 U.S. at 150, Eighth Circuit precedent leads me to believe that a clearly erroneous standard of review should generally be used as the baseline standard to review all findings in a magistrate judge's report and recommendation that are not objected to or when the parties fail to file any timely objections, *see Grinder*, 73 F.3d at 795; *Taylor*, 910 F.2d at 520; *Branch*, 886 F.2d at 1046; see also Fed. R. Civ. P. 72(b) advisory committee's note ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."). In the context of the review of a magistrate judge's report and recommendation, I believe one further caveat is necessary: a district court always remains free to render its own decision under *de novo* review, regardless of whether it feels a mistake has been committed. *See Thomas*, 474 U.S. at 153-54. Thus, while a clearly erroneous standard of review is deferential and the minimum standard appropriate in this context, it is not mandatory, and I may choose to apply a less deferential standard.[3]

---

[3] The Eighth Circuit Court of Appeals, in the context of a dispositive matter originally referred to a magistrate judge, does not review a district court's decision in similar fashion. The Eighth Circuit Court of Appeals will either apply a clearly erroneous or plain error standard to review factual findings, depending on whether the appellant originally objected to the magistrate judge's report and recommendation. *See United States v. Brooks*, 285 F.3d 1102, 1105 (8th Cir. 2002) ("Ordinarily, we review a district court's factual findings for clear error . . . . Here, however, the record reflects that [the appellant] did not object to the magistrate's report and recommendation, and therefore we review the court's factual determinations for plain error." (citations omitted)); *United States v. Looking*, 156 F.3d 803, 809 (8th Cir. 1998) ("[W]here the defendant fails to file timely objections to the magistrate judge's report and recommendation, the factual conclusions underlying that defendant's appeal are reviewed for plain error."). The plain error standard of review is different than a clearly erroneous standard of review, *see United States v. Barth*, 424 F.3d 752, 764 (8th Cir. 2005) (explaining the four elements of plain error review), and ultimately the

Here, the Commissioner has objected to some of Judge Strand's findings. Although I will review these findings *de novo*, and Judge Strand's other findings for clear error, I review the Commissioner's decision to determine whether the correct legal standards were applied and "whether the Commissioner's findings are supported by substantial evidence in the record as a whole." *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007) (citing *Haggard v. Apfel*, 175 F.3d 591, 594 (8th Cir. 1999)). Under this deferential standard, "[s]ubstantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002); *see also Page*, 484 F.3d at 1042 ("Substantial evidence is relevant evidence which a reasonable mind would accept as adequate to support the Commissioner's conclusion." (quoting *Haggard*, 175 F.3d at 594)). "If, after review, [the court] find[s] it possible to draw two inconsistent positions from the evidence and one of those positions represents the

---

plain error standard appears to be discretionary, as the failure to file objections technically waives the appellant's right to appeal factual findings. *See Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (stating an appellant who did not object to the magistrate judge's report and recommendation waives his or her right to appeal factual findings, but then choosing to "review[] the magistrate judge's findings of fact for plain error"). An appellant does not waive his or her right to appeal questions of law or mixed questions of law and fact by failing to object to the magistrate judge's report and recommendation. *United States v. Benshop*, 138 F.3d 1229, 1234 (8th Cir. 1998) ("The rule in this circuit is that a failure to object to a magistrate judge's report and recommendation will not result in a waiver of the right to appeal '"when the questions involved are questions of law or mixed questions of law and fact."'" (quoting *Francis v. Bowen*, 804 F.2d 103, 104 (8th Cir. 1986), in turn quoting *Nash v. Black*, 781 F.2d 665, 667 (8th Cir. 1986))). In addition, legal conclusions will be reviewed *de novo*, regardless of whether an appellant objected to a magistrate judge's report and recommendation. *See, e.g., United States v. Maxwell*, 498 F.3d 799, 801 n.2 (8th Cir. 2007) ("In cases like this one, 'where the defendant fails to file timely objections to the magistrate judge's report and recommendation, the factual conclusions underlying that defendant's appeal are reviewed for plain error.' We review the district court's legal conclusions *de novo*." (citation omitted)).

Commissioner's findings, [the court] must affirm the denial of benefits." *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (quoting *Mapes v. Chater*, 82 F.3d 259, 262 (8th Cir. 1996)). Even if the court would have "'weighed the evidence differently,'" the Commissioner's decision will not be disturbed unless "it falls outside the available 'zone of choice.'" *Nicola v. Astrue*, 480 F.3d 885, 886 (8th Cir. 2007) (quoting *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006)).

## B.    Discussion

This case turns on whether, under *Nevland*, the ALJ was required to obtain additional medical opinions from Hattig's treating doctors before finding, at Step 5, that Hattig is not disabled. The Commissioner argues that, by requiring the ALJ to obtain additional medical opinions, the R&R incorrectly places the burden of proving Hattig's RFC on the Commissioner when it should be on Hattig. The Commissioner's argument is based, in part, on how *Nevland* applies in the context of the ALJ's five-step, sequential evaluation process. In any social security case, the ALJ follows a five-step process to determine if a claimant is disabled.

> During the five-step process, the ALJ considers (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590 (8th Cir. 2004) (further citations omitted)). If a claimant does not meet the criteria at any step, the process ends and the ALJ must find that the claimant is not disabled. *Id.*

The claimant bears the burden of proof—including both the burdens of production and persuasion—through Step 4. 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003). Because the ALJ determines a claimant's RFC at or before Step 4, the claimant bears the burden of proving his or her RFC. *See id.* (noting that the ALJ will "assess your RFC once . . . after step 3 but before . . . step 4"); *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000) (noting that a claimant's "RFC is determined at step four, where the burden of proof rests with the claimant"). If the ALJ's evaluation proceeds to Step 5, the burden of production, but not persuasion, shifts to the Commissioner. *Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) ("The Commissioner recently promulgated a new rule designed to clarify that although a burden of production shifts to the Commissioner at step five, the ultimate burden of persuasion remains with the claimant." (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)). At Step 5, the Commissioner's burden is twofold: "The Commissioner must [] prove, first that the claimant retains the RFC to do other kinds of work, and, second that other work exists in substantial numbers in the national economy that the claimant is able to perform." *Eichelberger*, 390 F.3d at 591; *see also Nevland*, 204 F.3d at 857. Here, it is undisputed that the ALJ proceeded to Step 5. The Commissioner, therefore, bore the burden to produce evidence that Hattig (1) retains the RFC to do other kinds of work that (2) exists in substantial numbers in the national economy.

The Commissioner's argument that Judge Strand's application of *Nevland* wrongly shifts the burden of proving Hattig's RFC to the Commissioner is unavailing for a few reasons. First, the Commissioner's argument incorrectly suggests that *Nevland*, decided in 2000, is no longer good law after the Social Security Administration clarified, in 2003, that a claimant's RFC is determined "after step 3 but before . . . step 4" when the claimant bears the burden of proof. 68 Fed. Reg. 51154-55. As is discussed below, I do not think that applying *Nevland*'s holding alters the

Commissioner's burden. Moreover, the Eighth Circuit Court of Appeals has not overruled *Nevland*. To the contrary, the Eighth Circuit Court of Appeals has cited *Nevland* multiple times since 2003 without overruling it. *See, e.g.*, *Casey v. Astrue*, 503 F.3d 687, 697 (8th Cir. 2007) (noting that "*Nevland* addressed the evidence necessary to satisfy an ALJ's burden of proof at step five in the disability analysis"); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004) (noting that in "*Nevland* . . . we reversed an ALJ's decision because he relied on non-treating, non-examining physicians who formed an opinion solely by reviewing the reports of treating physicians").

Second, the Commissioner's argument seems to mistakenly conflate Hattig's Step-3 burden with the Commissioner's Step-5 burden. The Commissioner is correct that Hattig bears the burden of proving her RFC. A claimant's RFC is defined as "the most you can still do despite your limitations." 20 C.F.R. § 404.1545. Thus, at Step 3, Hattig bore the burden to prove what she could still do despite her physical or mental limitations. But, at Step 5, the Commissioner bore the burden of producing evidence that, given Hattig's RFC, Hattig could do work that exists in substantial numbers in the national economy. In other words, the Commissioner's burden was to produce evidence of jobs that fit Hattig's RFC. *See Warner v. Heckler*, 722 F.2d 428, 431 (8th Cir. 1983) ("[O]nce the claimant's capabilities are established, the Secretary has the burden to demonstrate that there are jobs available in the national economy that can realistically be performed by someone with the claimant's qualifications and capabilities."). Requiring the Commissioner to prove the existence of *jobs* a claimant can do consistent with the claimant's RFC is not the same as requiring the Commissioner to prove the claimant's RFC. Thus, Judge Strand's recommendation that the ALJ obtain additional evidence before making her Step-5 determination does not shift the burden of proving Hattig's RFC to the Commissioner.

Finally, and most importantly, the R&R relies on a portion of *Nevland* that discusses the ALJ's duty to develop the record, which exists independent of a claimant's burden of proof. "It is [] well settled law that it is the duty of the ALJ to fully and fairly develop the record, even when, as in this case, the claimant is represented by counsel." *Nevland*, 204 F.3d at 857 (citing *Warner v. Heckler*, 722 F.2d 428, 431 (8th Cir. 1983)). The ALJ's duty to develop the record includes "arranging for consultative examinations, if necessary, and making every reasonable effort to get medical reports from [a claimant's] own medical sources." 68 Fed. Reg. 51153, 51155. "Because the social security disability hearing is non-adversarial . . . the ALJ's duty to develop the record *exists independent of the claimant's burden in the case.*" *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) (citing *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004)) (emphasis added).

But, "[w]hile the ALJ has an independent duty to develop the record in a social security disability hearing, the ALJ is not required 'to seek additional clarifying statements from a treating physician unless a crucial issue is undeveloped.'" *Goff*, 421 F.3d at 791 (quoting *Stormo*, 377 F.3d at 806). For example, an ALJ must seek additional information from treating doctors if "the doctors' records [are] inadequate, unclear, or incomplete," or if "the doctors used unacceptable clinical and laboratory techniques." *Id.* (citing 20 C.F.R. §§ 404.1512(e), 416.912(e)). On the other hand, "an ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision." *Naber v. Shalala*, 22 F.3d 186, 189 (8th Cir. 1994).

Based on these standards, the real question here is whether the record was "undeveloped" such that the ALJ had a duty to seek additional evidence from Hattig's treating doctors. Judge Strand concluded that Hattig's record was undeveloped based on *Nevland*. In *Nevland*, the administrative record contained "no *medical* evidence

about how [the claimant's] impairments affect[ed] his ability to function now." 204 F.3d at 858. The record in *Nevland* established that the claimant suffered from dysthymia and ADHD. *Id.* But, the record was unclear as to "how these impairments . . . affect[ed] [the claimant's] residual functional capacity to do other work." *Id.* Although the record contained "numerous treatment notes," none of the claimant's treating "doctors was asked to comment on [the claimant's] ability to function in the workplace." *Id.* Under these facts, the Eighth Circuit Court of Appeals held that the ALJ failed to properly develop the record before finding that the claimant was not disabled at Step 5, and remanded the case. *Id.*

*Nevland*, however, does not compel remand in every case in which the administrative record lacks a treating doctor's opinion. As the Commissioner points out, I recently held in *Agan v. Astrue*, 922 F. Supp. 2d 730, 756 (N.D. Iowa 2013), that the ALJ properly denied a claimant benefits without first obtaining a treating doctor's opinion on the claimant's work-related limitations. *Id.* In *Agan*, "the ALJ's RFC assessment [was] supported by substantial evidence in the record," and "[t]he ALJ did not rely solely on non-treating doctors to form an opinion on [the claimant's] RFC." *Id.* at 755. The claimant in *Agan* claimed a disability based on back pain. *Id.* at 752. Unlike in *Nevland*, the record in *Agan* contained "medical evidence following [the claimant's] last back surgery . . . which indicated that he was 'doing very well post-operatively.'" *Id.* at 755. "Physical examinations following [the claimant's] surgery indicated normal functioning of his extremities." *Id.* The record in *Agan* even contained evidence that, after his back surgery, the claimant "was working full-time with no limitations noted at his follow-up exam." *Id.* Based on this record, I found that "[t]he medical evidence, including physical examination treatment notes from the treating physicians, provide[d] sufficient support for a finding that [the claimant] was

able to function in the workplace." *Id*. at 756. Thus, I held that the ALJ in *Agan* did not need to further develop the claimant's medical record. *Id*.

The record in the case at hand is more similar to *Nevland* than it is to *Agan*. In particular, I agree with Judge Strand's assessment that the record here contains insufficient evidence of "the nature and severity of Hattig's impairments during the relevant period of time, including her symptoms, diagnosis and prognosis, what she is capable of doing despite the impairments, and the resulting restrictions." Report and Recommendation 13 (docket no. 17). Simply put, there is no evidence—no party has cited any—of "how [Hattig's] impairments . . . affect [her] residual functional capacity to do other work," or her "ability to function in the workplace." *Nevland*, 204 F.3d at 858. Thus, under *Nevland*, the ALJ did not properly develop the record and should have sought additional evidence from Hattig's treating sources before making a Step-5 determination.

The Commissioner argues that the record here was sufficiently developed because it "contained substantial treatment records, and the opinions of the State agency medical and psychological consultants" (docket no. 18, at 9). According to the Commissioner,

> [t]he ALJ gave great weight to [Hattig's] treatment records, which showed: the conservative treatment regimen of only medication and therapy, with periods of noncompliance; objective clinical findings that were less severe than those plaintiff alleged; and symptoms that, particularly after plaintiff's alleged disability onset date of October 2009, were only moderate[.]

(Docket no. 18, at 9). But, the Commissioner does not identify, quote, or reference any specific piece of medical evidence in the record to support this claim. Rather, the Commissioner suggests, via citation, that the following pages of the record support the Commissioner's argument: Tr. 21-25, 313-14, 346-47, 371-77, 599-639. Those pages

simply do not discuss, or provide evidence of, how Hattig's RFC would affect her ability to do work or function in the workplace.  I therefore find that *Nevland* compels remand in this case.

### III.  CONCLUSION

For the reasons discussed above, I adopt Judge Strand's R&R (docket no. 17). The Commissioner's decision is reversed and this case is remanded for further proceedings consistent with the R&R.  The Clerk shall enter judgment against the Commissioner and in favor of Hattig.

**IT IS SO ORDERED**.

**DATED** this 12th day of December, 2013.

_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA